# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT ST., 26TH FLOOR
BROOKLYN, NY 11241-1026

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900
Fax: (877) 496-7809

August 12, 2019

VIA ECF
Magistrate Judge Ramon E. Reyes, Jr.
Eastern District of New York
Brooklyn, NY 11201

> Re:  Letter Opposition to Houslanger's letter motion for pre-motion conference to renew motion for reconsideration [DE 89].
>
> *Levy v. Platinum Financial Services Corp., LLC,* **1:18-cv-06936-DLI-RER**

Dear Judge Reyes:

The undersigned represents Plaintiff Isaac Levy in this suit against Defendants for their violations of the Fair Debt Collection Practices Act, and for related claims.

Houslanger's latest letter request to the Court [DE 89] comes as a surprise to Plaintiff as it was our impression that we were near completion of the discovery stipulation. Only four minutes before filing did Houslanger's counsel state that "we do not have a mutually agreeable stipulation." This is particularly surprising given that the stipulation was meant to spare Houslanger the alleged burden of determining responsive answers to Plaintiff's discovery. It presumably comes as a surprise to this Court given two extensions have been requested and granted [DE 82 and 84], particularly on the premise that Plaintiff and Houslanger had "made significant progress." It is unfortunate that Houslanger is spurning this opportunity provided by the Court to attempt for now the third time, despite Your Honor's clear instructions and orders, to convince this Court to reverse all its prior decisions and go against its own clear reasoning. Houslanger is self-sabotaging its chance to deal with these discovery issues in a stipulation, and while they are permitted to make such a choice, it is not grounds for reconsideration.

## ARGUMENT

1. **Plaintiff has, as instructed by the Court, offered to resolve many of the discovery issues by stipulation which Houslanger is now rejecting, including Plaintiff's 1692g claim.**

Unsurprisingly, in this letter prompted by the failure of Houslanger's alleged good-faith attempts to reach a joint stipulation on discovery, there is very little detail as to the negotiations that the parties have expended considerable time and effort on. What detail is provided is patently misleading, giving the impression that Houslanger proposed one version of the stipulation and Plaintiff counter-posed an unacceptable version. In actuality, the parties have exchanged no-less than seven different complete proposals with dozens of proposed line-edits discussed by email and phone. The allegedly offensive provisions as to estimates are found in the proposals made by Houslanger's counsel as well as by Plaintiff's counsel (*see e.g.* **Exhibit A** (Last Version of Discovery Stipulation by Houslanger)) – to willingly discuss such provisions and then state to the Court that they are proof of a fishing expedition is disingenuous and demonstrative of Houslanger's intention to not cooperate in the discovery process. If at the very

least the provisions of this version of the discovery stipulation are true (and they never deny they are in their Letter [DE 89]), there is no reason a mutually agreeable stipulation could not have been reached.

Notably, this version (**Exhibit A**) does not have any provision as to § 1692g notices under the FDCPA. Houslanger now argues, yet again, that Plaintiff's RFP #16 from his Second Set of Discovery Requests seeks "discovery on *allegations* [original emphasis] asserted by unrelated parties who have nothing to do with the claims asserted by Plaintiff." DE 89. Houslanger could have avoided this discovery through the discovery stipulation, but in this regard they were obstinate even while they were offering estimates on other matters, so this is indeed one issue that cannot be solved by a mutually agreeable stipulation but by the will of Houslanger alone. Plaintiff is not arguing that previous allegations against Houslanger are dispositive nor is he trying to enter them into evidence – this is discovery, and for establishing a pattern and practice of failing to send § 1692g notices, previous allegations of Houslanger doing so are certainly relevant. *Martinez v. Lvnv Funding, LLC*, No. 14CV00677RRMST, 2016 WL 5719718, at *4 (E.D.N.Y. Sept. 30, 2016) (discovery on allegations from other cases "may well lead to admissible evidence establishing Defendants' alleged conduct").

As Plaintiff's counsel explained several times to opposing counsel, the intent of having a broad scope to the joint stipulation is to eliminate as many discovery disputes as possible and thus the need for further motion practice. Houslanger is simultaneously complaining that there are too many discovery requests and that the stipulation would cover more discovery requests than in their motion for reconsideration. Houslanger ignores the Court's July 9 oral instruction to the counsel to see if the 1692g notice discovery issue can be resolved by stipulation and, more generally, to see what discovery issues could reasonably be resolved by stipulation.

2. **Houslanger admits many of the statements in the stipulation are true, but still will not agree to its filing.**

On August 9, 2019, Plaintiff made one final attempt to salvage working out a stipulation to at least have some of the discovery issues resolved, emailing another version of the discovery stipulation (*see* **Exhibit B**) and outlining exactly what discovery requests it would resolve. *See* **Exhibit C** (August 9, 2019 Email). While the entire stipulation (**Exhibit B**) would be required to resolve all the discovery requests specified in the email, Plaintiff (pursuant to a phone conversation with opposing counsel that day) suggested at least getting sign off on items 2-4, 7, and 8.[1]

---

[1] The August 9 Stipulation stated:

    **A. 1692g and notice of assignment claims.**
1. The "Houslanger Firm" currently handles for collection approximately _____ consumer credit collection cases the ("Cases").
2. Approximately 85% of the Cases arise from judgments obtained against a consumer/judgment debtor (the "Judgments").
3. Approximately 75%% of the Judgments handled by the Houslanger Firm were entered in favor of a putative creditor who subsequently assigned the judgment prior to the Houslanger Firm handling the Judgment for collection. ("Creditor Assigned Judgments")
4. Approximately 75% of the Judgments handled for collection by the Houslanger Firm were entered by a law firm other than the Houslanger Firm. ("Attorney Assigned Judgments")

    **B. Stipulation claims.**

2

**Critically, counsel for Houslanger agrees that all of the facts listed in ¶ ¶ 2-4, 7, and 8 are true.** Indeed while Houslanger vaguely complains about how difficult it would be to obtain certain information, it was counsel for Houslanger who inserted the numbers for ¶ 2 – 4. Stipulating to ¶ 2-4 would resolve many issues related to Plaintiff's claims for Houslanger failing to provide a notice of assignment for creditor assigned judgments or a 1692g notice for either creditor or attorney assigned judgments, and failing to perform a meaningful attorney review to determine whether those notices were sent prior to collections. ¶ 1 simply seeks the approximate number of collection cases he handles. Counsel for Houslanger indicated he may be able to determine the current number of cases, and then state the current number is approximately the same for 2017-2018, but then dropped cooperation on that point entirely.

Perhaps most importantly are ¶ 6-8 regarding the policy of using Stipulations. As to Plaintiff's claims regarding Houslanger attempting to dupe, and if unsuccessful pressure consumers to sign deceptive Stipulations, ¶ 6 was the language proposed by Houslanger.[2] Moreover, counsel for Houslanger agrees that ¶¶ 7 and 8 are true and, indeed, are merely subcategory of ¶ 6, but still will not agree to a stipulation that includes that language. For Plaintiff, ¶ 7 and 8 are essential because of their specificity. Since Houslanger admits ¶¶ 7 and 8 are true, it is a mystery why Houslanger insists on further motion practice rather than agreeing to these undisputed facts.

---

5. In 2017-18, the Houslanger Firm made approximately 750 court appearances in connection with a debtor's attempt to vacate a judgment, which were either orders to show cause to vacate a judgment or traverse hearings to vacate a default judgment.
6. In 2017-2018, where the Houslanger Firm was presented with the opportunity to settle or discontinue consumer credit matters in which the Houslanger Firm represented judgment creditors and the debtor made an application to a court to vacate a judgment that had been entered against the debtor, it was the Houslanger Firm's practice to propose a stipulation of settlement containing mutual release language similar to the stipulation that the Houslanger Firm offered to Plaintiff. This includes the Houslanger Firm proposing such a stipulation:
    a. at hearings for a debtor's order to show cause to vacate a default judgment,
    b. at traverse hearings for a debtor seeking to vacate a default judgment, and
    c. by way of mailing, prior to a hearing, the stipulation with a letter similar to the letter that Defendants sent to Plaintiff.
7. In 2017-2018, where the Houslanger Firm represented judgment creditors and the consumer/judgment debtor made an application to a court to vacate a judgment that had been entered against the consumer/judgment debtor, it was the Houslanger Firm's practice to propose, at hearings for orders to show cause to vacate a default judgment, and at traverse hearings to vacate a default judgment, that the consumer/judgment debtor sign a document materially the same as the document entitled "Mutual Stipulation Vacating Judgment, Discontinuance With Prejudice & General Release" attached as Exhibit K to the Original Complaint, DE 1-11 pp. 2-5 (hereafter the "Stipulation.")
8. In 2017-2018, where the Houslanger Firm represented judgment creditors and the consumer/judgment debtor filed an order to show cause to vacate a judgment that had been entered against the consumer/judgment debtor, it was the Houslanger Firm's practice to mail the consumer/judgment debtor, prior to the hearing on the order to show cause, a document materially the same as the Stipulation, along with a cover letter that is the first page of Exhibit K to the Original Complaint, DE 1-11 pp. 1 (hereafter the "Cover Letter.")
9. Houslanger has never had a process server appear at a Traverse hearing seeking to vacate a default judgment from 2017-2018.
10. Over 95 percent of consumers sign the Stipulation without any material changes.
11. Over 95 percent of the Stipulations signed by consumers are signed by the consumer "pro se."
12. In over 90 percent of hearings where a consumer appears for her Order to Show Cause to Vacate a Default Judgment, the consumer is *pro se.*

[2] Plaintiff is not opposed to ¶ 6; it is just that the language is so imprecise that it is of little value to Plaintiff.

¶¶ 9-12 were in prior proposed stipulations proposed by Plaintiff. Houslanger never agreed to (or rejected) the language, but as a factual matter it is extremely doubtful that they could, within the confines of Fed.R.Civ.P. 11, deny the allegations.

3. **The Court should deem the facts in the stipulation true, or, in the alternative, order Houslanger to clearly admit or deny each item.**

Given Houslanger's new position that a joint stipulation is impossible, Plaintiff requests that Houslanger's request for pre-motion conference be rejected and additionally that Houslanger be given until August 16, 2019 to comply with the Court's June 11, 2019 Order or face contempt. However, given Houslanger's continued refusal and pursuant to Fed. R. Civ. Proc. 37(b)(2)(A)(i), Plaintiff requests that this Motion [DE 89] and Plaintiff's outstanding discovery demands be resolved by taking the facts designated in the attached stipulation (**Exhibit B**) as established for purposes of this action, as Plaintiff claims and as Houslanger has suggested are true during the negotiations over the Stipulation.

Alternatively, the Court can just order Houslanger to answer whether or not ¶ 2-12 are true, and to provide the information for ¶ 1. Plaintiff will be filing a motion seeking the same as Houslanger has objected to answering discovery seeking the same information.

4. **The previously scheduled conference on September 5, 2019 is sufficient to push forward settlement negotiations, whereas an early in-person conference would be unduly burdensome to the parties and needlessly expend Court resources.**

Houslanger now requests from this Court an in-person conference as Your Honor requested for this matter's initial conference. Notably, Plaintiff complied with that previous request and Defendants did not – based on that history alone it is difficult to take this request seriously. Plaintiff has always stated that he needs certain basic discovery to accurately assess the value of this case. While Houslanger boldly leads by stating that Plaintiff "has now served *five sets of discovery requests* [original emphasis]," the reality is the attempted joint stipulation and now this request are still dealing with the first set of discovery propounded to Houslanger after the initial conference.[3]

Nevertheless Your Honor instructed that Plaintiff make a settlement demand which Plaintiff had planned to do but had not been able to get to given the amount of resources and time being spent on a now-fruitless attempt at a joint stipulation. Plaintiff has now made a settlement demand and Plaintiff and the Houslanger Defendants filed a stipulation that"[i]n order to facilitate frank and productive settlement discussions," settlement discussions will be confidential.[4] Further, it was Plaintiff's counsel that asked to confer about settlement the following week when Houslanger's counsel called on or around August 1, 2019 to ask for our consent to their request for extension in another matter. Then it was again Plaintiff that emailed on August 6, 2019, asking to confer about settlement on August 8, 2019. Like with practically everything else in this matter, Houslanger did everything to obstruct what Plaintiff needed to make a settlement demand and now claims to be the victim.

---

[3] The first set of discovery in this matter, propounded prior to the initial conference, was solely to try to locate Defendants Gerald K. Murray and Platinum Financial Services Corp. LLC.

[4] Oddly, after agreeing to the confidentiality stipulation but before signing, Houslanger filed a letter [DE 89, p. 2, ¶ 2] disclosing (deceptively) settlement discussions. Plaintiff is now limited by the confidentiality stipulation.

4

### 5. Houslanger's repeated requests for additional opportunities to prove its arguments are dilatory and inappropriate.

Houslanger is requesting the renewal of their motion for reconsideration [DE 70] on Your Honor's decision granting Plaintiff's Motion to Compel [DE 62] which Houslanger opposed [DE 65]. Between Houslanger's Opposition to the MTC, the Motion for Reconsideration, and the present request, Houslanger has had three opportunities to argue why the discovery requests are unduly burdensome, and it has so attempted. Notably, Your Honor even told Houslanger's counsel on the July 9, 2019 call that their arguments as to burden had been considered.[5] And yet all Houslanger now provides in the present letter, rather than new arguments or information that might justify reconsideration, is a hollow request for "the opportunity to brief the issue." Houslanger has had the opportunity three-fold and they cannot reasonably believe a third repetition of their argument will now succeed, so this request should be rejected as dilatory and inappropriate, needlessly running up attorney's fees on all sides.

Respectfully,

/s/

Ahmad Keshavarz

---

[5] *See* **Exhibit D** (Transcript of July 9, 2019 Conference), Trans. 16:22-17:06, "Three responses to that: Number one, I actually didn't overlook it, I considered it. Number two, it's basically an argument of, we're too big to fail. We've got so many cases, we're so busy, we can't be expected to look into it. It's almost a built-in argument for hiding violations of the F[D]CPA. Number three: You know, it's your clients record keeping, that's their problem. If they don't keep records in a way that's easily searchable, then that's a burden that they put on themselves."